Case number 25-3299 Stacey Cales et al. v. Theisen Brock LPA et al. Oral argument 15 minutes per side. Mr. Ropchak for the appellants. Please the court. Mark Ropchak on behalf of the plaintiff appellant Stacey Cales and her business Road to Recovery. I've requested three minutes for rebuttal. The only issue for appeal in this case, your honors, is when did the cognizable event take place that triggered the running of the statute of limitations in my client's legal malpractice case against her former attorneys? And did she bring her case within a year of that cognizable event? The answer to that question is on April 13th, 2023, the cognizable event took place. What happened on that date? My client was seated in the office of her subsequent counsel, George Cosenza. Mr. Cosenza had a copy of the promissory note on his desk, which is the very crux of the legal malpractice case against her former attorneys. On that date, he circled a provision in the promissory note. He circled the liquidated damages clause. He slid that document across his desk to her, and he said, Stacey, this is all you're entitled to, the liquidated damages amount. And he said, you're not going to get the $1.5 million for your business that you sold it for. You're getting $125,000 in liquidated damages. How long had Cosenza been her attorney? I'm not sure of the exact date, your honor. It was about a year ago, I think. So was Cosenza just sitting on the case during that time? Like, why hadn't he told her that earlier? Regrettably, you are corrupt. He just basically was sitting on it. But that was his first opportunity when he had examined all the facts and had looked at the record and was able to advise her. And that's the date that he did indeed advise her. So if he had taken an extended vacation and not gotten to her for five years, and the case had just been stagnant, the same thing would apply? That you would say it's when the new lawyer tells her this provision is going to limit your damages? Absolutely. And there's certainly a great wealth of case law that would support that position. What are your best cases to support that? The new attorney giving the defense? The case of Crystal versus Wilsman out of the 8th District, I believe. In that case, the lady and her husband were going through a divorce, and she was dissatisfied with her representation. The husband had had a law practice. She was dissatisfied with her representation from her domestic relations attorneys, and she was dissatisfied with that through the entire litigation. After the divorce, she was still dissatisfied, thought they did not represent her. She did not receive actual knowledge. The cognizable event did not take place until a subsequent domestic relations attorney advised her that her first attorneys should have valued her husband's law practice in the divorce. And that was the cognizable event, which was years, in fact, after the representation of the initial divorce. Why are we proceeding here under actual knowledge instead of constructive knowledge? In terms of the legal standard we're going to apply, because your client, as I understand, had been apprehensive previously about this issue. And the conversation with the attorney was a matter of when she acquired actual knowledge, but is there a constructive knowledge argument to be made against your client? I don't think so, Your Honor, because I think what the district court did was basically just take all the things that the court could come up with and put it in a can and say, there's got to be a cognizable event in here somewhere. And that's not the way the analysis takes place for a cognizable event. For instance, if you were asking me about the fact that this document prior to her even signing the contract, the promissory note, she had questions about it. She asked her attorneys, she said, hey, if I read this promissory note, it looks like the people that are buying my business could simply stop paying and then only owe the liquidated damages amount. She asked her attorneys that question, and they responded that, no, you're incorrect, Stacy, you're not a lawyer, you don't understand. There's something called the implied covenant of good faith and fair dealing that takes care of that. So the lawyers, in fact, in that instance, basically told her, you're wrong in your interpretation of the law. And she had a right to rely on that. So the magistrate judge, who was the decision maker below, said that the cognizable event, am I correct, was March 2022? Is that when the relationship ended with this law firm that was her opponent? That's what she said. And interestingly, the law firm actually represented her for two purposes. The first was the drafting of the documents, but that had been long gone. They were also representing her in the prosecution of the lawsuit against the folks that didn't pay her for the business. So on that date, she had terminated representation with the law firm. But it's clear in the record, and this is what the, and by the way, these are all factual determinations, which in one regard the court probably shouldn't have been engaging in, or should at least give my client the benefit of the doubt of. But if you look at what the four pages, there's only four pages in the transcript of her testimony that says why she discharged the law firm. And the reason she discharged the law firm was she was dissatisfied with the pace of the litigation that was taking place. So in other words, as she's put it, she wanted a bulldog. She wanted, she could not understand why she sold a business for 1.5, had a big firm, law firm, draft the contracts for the sale of this business. And then these folks just stopped paying her. Why couldn't she just sue them and get the money? So that, the litigation was not proceeding as quickly as she had wanted. And that was the reason she terminated. And that's why she went to Casenza, for his reputation as being a, quote, bulldog, you know, sort of what lay people think lawyers are. But what, how case law, statutory law are we under here to determine if we're proceeding based on actual knowledge or constructive knowledge? Because that would govern really whether your argument is controlling. Well, we still have to determine. Because the instance, your argument is premised entirely on the actual knowledge that your client received from her attorney in April of 23, when this whole issue that caused your client's losses was of concern to her in several instances previously over time. So, but that would be perhaps under a constructive knowledge argument. But you're talking only about actual knowledge. So, and we're under Ohio law, so what's the governing law that we're looking at here? Well, the Zimmy case, the Ohio Supreme Court, is enunciated, the client has to have actual knowledge of a potential legal malpractice case. Now, there's other case law that I've cited, such that the Getch case out of the 11th, where a cognitive, excuse me, a cognizable event requires more than general dissatisfaction with one's attorney. Also, in the Hilario versus Taft case out of the 8th, just because in that instance, a friend of a South American basketball player told him that, hey, your attorneys have made a mistake here. But the court held that, no, the client had the right to rely on the attorney's representations, that they had done nothing wrong. And that's what had gone on here. The attorneys had told my client specifically that her interpretation of these agreements was wrong. And in fact, that's what actually happened. But what, another alternative date, given that there are many, is November 2021, when the buyer answered the complaint and raised the statute of limitations defense in the answer. So shouldn't that have put your client on constructive notice that there was a grievous problem with the contract that her lawyer had drafted? No, it should not have, because also sandwiched in there in pages and pages of affirmative defenses, as you know, there's latches, unclean hands, accord and satisfaction, a fraud, all sorts of affirmative defenses are going to be listed in any answer, which have absolutely nothing to do with the case. And there's a case- Doesn't that violate Rule 11? If a defense lawyer plops in all these defenses that have nothing to do with the case? That's unfortunately what happens. There's usually page after page of them. The Vagliano's case out of the 8th District said it best, better than I can, very short quote, the mere assertion of a defense does not establish that the defense has any merit, any merit, much less that counsel's substandard representation is responsible for the availability of that defense. So there's no reason to treat the mere assertion of that defense as a cognizable event. Otherwise, the court would be flooded with- What that would require, Your Honor, is all these affirmative defenses that would be listed, a client would have to go hire separate counsel and then ask counsel, hey, what do these affirmative defenses mean, and did my lawyer do something to cause this? It would not be a workable scenario. So you've mentioned a number of cases, and the only one that you've mentioned being an Ohio Supreme Court case is Zimmey. In Ohio, there are a number of courts of appeals, the district courts of appeals, and each one gets to make up its own law as long as it's not in conflict with the Ohio Supreme Court. So we could have the 8th District Court of Appeals doing one thing and the 1st District Court of Appeals doing another thing, correct? True. For most of these cases that I've looked at in this litigation, the only thing I found that looked sort of, I would say, out of line was what the second had done with a couple of the cases that were cited by my opposing counsel here. I think those are, one, distinguishable on their facts, sort of unique, but secondly, also, at least one of them would be in direct conflict with Zimmey, but, you know, things just don't always get appealed. Thank you. Thank you. May it please the Court, Counsel, I'm Patrick Kastner, I represent Chris Justice and his law firm. I want to start with Zimmey. With respect to counsel, he miscited it. On page 400 to 401, Zimmey was clear. It's a two-part standard. An objective standard, where you could have actual knowledge, or a should-have-known constructive standard. Zimmey did not say it has to have actual knowledge. It was absolutely clear, and every Ohio case since then has said that, as has this Court and FDIC said the exact same thing. So we're here under the second part, which is the constructive knowledge standard under Ohio law, and it's a should-have-known standard with reasonable diligence. So what do you think is the date that your opponent's client should have known? At the very least, when she terminated her lawyers. And I think the magistrate— Well, she has the argument that she was terminating them because this other guy at the firm, Schwederman, was not prosecuting the case quickly enough. Sure. And what the magistrate judge did is she correctly pointed out everything is in context with what happened before. So also what she said is at that time, on page 6, I think 31, page 77 and 78 of her deposition, she said, I thought they thought the contract was weak. In my opinion, they felt the contract was weak and that they couldn't defend it. So at the time she terminates her lawyers, she thinks those lawyers think the contract can't be defended. So let's look at what the magistrate judge did in context to what occurred before then. So before she signs it, she's tuned into this provision. She describes herself as a reader and she read everything. Unlike in that 8th District case where they said the affirmative defense didn't matter because the client had never read it, she reads everything. So she brings up this specific clause before she signs it. She's reassured by her lawyer that don't worry, there's some other stuff here that will protect you. So I don't know how you can say that that's the point, that somebody should bring a malpractice claim against that lawyer. Of course not. Not before she signs it. But she's aware of it. Then she signs it. Then they stop paying her. They say, we don't have to pay you under the agreement. That's a second event. But there were other reasons why they weren't paying her. Sure. But then they file the affirmative defense and say, one of the reasons we're not paying you is this clause. And she reads it. And there are many other affirmative defenses. And she is not a lawyer. She is still being represented by some lawyer at this firm who's taking care of the case. And nine of those defenses had to do with contract formations saying the contract wasn't good. Nine of those defenses were. Most of those defenses were geared towards this contract isn't enforceable. So she should have gone and hired a new lawyer right then when the answer was filed. She did shortly thereafter. And at the time she hired a new lawyer, she testified, she thought the lawyer she was firing didn't think the contract was defensible and thought it was weak. I thought she also said in that deposition other things that would suggest that she thought the Shwederman guy was not adequately representing her. He was not enough of a bulldog. That's why she said she fired him. But at the moment in terms of what she knew, she also thought he didn't think he could defend it. So what Ohio says is she has a duty to investigate. She doesn't have to have actual knowledge or even constructive knowledge that legal malpractice occurred. She only has to have a reason to think maybe something's amiss. And when you say Ohio requires this, who in Ohio requires this? So the Supreme Court in Simi said that. In Taylor, all the cases are constructive knowledge with reasonable diligence. Taylor imposed a duty. Harris also, we cited Harris, talked about that, the duty to further investigate. And that's common through all constructive knowledge cases, right? MedMal, whatever. You don't have to know there's a problem. You have to know something's amiss. So she fires these lawyers. She gets a new lawyer. And all she has to do over the next year and three months if she's got this lawyer is say, what about this? And she doesn't do it. Is there evidence in the record here that she did or did not pursue this Cosenza guy for further information about what was going on in her case? Do we know anything why it took a year for Cosenza to give her the document and say you're limited? Those are privileged conversations. I'm asking whether we know anything. You could say no, we don't know. We don't, because they were privileged. But we know she had the opportunity to. We know that she thought her lawyers didn't think it was defensible. You're continuing to characterize that deposition. I'm just saying what she said. She said, I fired them because I didn't think they were bulldogs. But she expressly said, and it's been recharacterized by the brief, but it's not what the depo says. She expressly says, I believed they didn't think they could pursue it. I believe they thought it was weak. She expressly said that. That was her belief. Aside from why she terminated them, at that point in time, she thought her lawyers had questions. She had multiple affirmative defenses. They weren't paying her. That's sufficient. There's multiple HIO cases that say an affirmative defense is enough. What would you give us as your multiple cases? Give us a couple.  I'm too old to remember you off the top of my head. We have the same problem. The Reyes and the Jackson v. Gregor case, both of those cases. Reyes and Jackson. Here's the thing. In the Veris case, they cited an attempt in the 8th District. In Veris, what the court said is, an affirmative defense in a vacuum isn't enough. The plaintiff hadn't read it. It was just in a vacuum. Here you've got someone not in a vacuum. That's what the magistrate judge is saying. You've got a course of events that at this time, at the very latest, she had to have a reason to investigate, and she didn't. I have problems with your putting the onus on the client. I think about not only law relationships but doctor-patient. Kazemi does indicate that we analogize the attorney situation with the doctor-patient. When is the person supposed to be investigating the professional who has done the work and has reassured the client or the patient, Oh, you don't have a problem. Trust me. I'm the real expert here. When she has a belief that something questionable may have occurred, every case it's going to be that the lawyer said anything wrong. Out of the 12 or 13 cases we cited, I think 11 of them upheld summary judgment, every case the lawyer didn't do something wrong. What the courts have repeatedly said is, if they know something's amiss, they have a duty to further investigate. Why doesn't your client, the lawyer who drafted this, fight this on the merits? We did. Instead of relying on statute of limitations. I know. I know. That is the elephant in every room on a statute of limitation case, isn't it? Yeah. It's the elephant in every room. You let them off on a technicality. Please look at the summary judgment pleadings. That was the thrust of it. So your summary judgment pleadings say, Oh, we've got lots of good reasons why this contract is a good contract. Absolutely. Please look at them. Okay, then why should she be the one left holding the bag here about complaining about your client's malpractice? I'm sorry. I don't understand the question. If the contract was good, she should be able to defend the contract in this action that she brought with your client's firm, which is also a client of yours, and you should be able to provide the defenses. Sure. Well, Rule 8 allows alternative defenses, right? Mm-hmm. So we raised both. If you look at the summary judgment pleadings before, the complaint alleged one malpractice. It was specific. The failure to include a cumulative remedies clause, which means you've seen them in contracts where it says notwithstanding the law, these folks can get any remedy they want ever, right? It's a cumulative remedies clause or some clause like that. It's the sole basis for the legal malpractice in a complaint. I flipped their lawyer in the deposition. Their expert agreed that they just misread the contract. There's a cumulative remedies clause in it. It specifically is in the contract that says they get all the remedies under the law. The guarantee to the contract says this plus this. So we moved under that. I get it. You moved in the recent case, correct? In this case. In this malpractice case that we have in front of us. We did. So why didn't Schwederman, who's representing her, who's one of the people at the law firm that's the defendant in the malpractice action, why didn't he do that? Doesn't this show that he was not a bulldog and he was not actually helping her out? He didn't get a chance. They didn't get to deposition. They didn't get to anything, right? I mean, she was upset. If you read what she was upset because he gave courtesy extensions of time. How long was he, the lawyer, in the case? It was less than six months, I believe. I mean, he didn't get a chance. He didn't get a chance to file a motion. She fired him. And then Costanza never asked. That's a reason the statute of limitations matter. If you look at what some of these courts say, if you keep it going on forever and you don't put some burden on them, then it'll go on forever. If she had asked early and they had fought this earlier, Schwederman would have said, hey, you're out of your mind. Read this part of the contract. But he didn't. And Schwederman is not a defendant, by the way, in this case. So there's no claim against him. It's the law firm that employs him. Well, but the Ohio Supreme Court's clear. There's no claim against Schwederman or the law firm for his act because under Wirth, you have to sue the lawyer. So the only conduct at issue here is the drafting of the contract. And the magistrate judge correctly noted it. So Schwederman's conduct's not at issue here in this case. Under binding Supreme Court law, I don't think there'd be an argument it is. But that's my point. I get it. I get it. I mean, of course we had a defense. It was the thrust of our summary judgment. But I think trial judges are allowed to throw it out on a statute of limitations and not wade into that. And she did. But if you think for a second we're trying to get on a cut and cut, please read it. It was overwhelming. Doesn't this case sound awfully sad and unfair to the client? In her second, she hired a criminal lawyer. I'm sorry? She hired a criminal lawyer to be her second lawyer who didn't read the documents. You're talking now about Kosenza? I am. She hired a criminal lawyer. She fired a civil litigator and hired a criminal lawyer who didn't read the documents. If you read their expert's deposition, he says to me in the deposition, oh, wait a minute, you're right. There is a cumulative remedies clause in these documents. In fact, there's four of them. And there's one that specifically says there's cumulative remedies for the entire transaction. And, by the way, this idea that the liquidated damage provision is the only limit, only damage, the guarantee to the contract says I'm guaranteeing the liquidated damage and all the other remedies. No, the underlying case was a joke. I mean, we tore it up. But we also moved on statute of limitations. That's what she found on it. I'm sorry. I'm a little confused here. On Kosenza, you said Kosenza admitted in his deposition. He wasn't deposed, but she hired a criminal lawyer to handle it. It's not our fault that he didn't get it. I thought you just said, maybe I misheard. I thought you just said that Kosenza admitted he didn't read the documents. No. I misheard. Their expert witness in this case. In Ohio law, you've got to have a standard of care expert witness. They had an expert witness I deposed who wrote a report and said, the malpractice was because there wasn't a cumulative remedies clause. I deposed him and showed him the documents, and he said, oh, you're right. There was a cumulative remedies clause. But that was their expert. Yeah. That's their expert. They just hadn't read the documents closely. The complaint says there should have been a clause, a catch-all clause, that says no matter what this agreement says, no matter what the law says, you understand the difference between rescission and whatnot, no matter what the law says, they get every remedy under the sun. That's what the complaint said. There should have been a clause for that. Their expert agreed there was multiple clauses. So, yeah, I get it. I get it. And that's why I'm worried coming down here society, they're getting away from something. We just weren't. I mean, the thrust of our summary judgment motion was they didn't have an expert that was critical of us, which you need under Ohio law, and expressly what they said in the complaint, their expert agreed, isn't true. And if you look at the documents, it's not true. Right? And Schweiderman never got a chance to litigate it because they fired him because he was given extensions and courtesy and went out and hired a criminal lawyer who didn't tell her about it for a year and three months later. I mean, that's what happened. And the last thing is, you know, they keep on saying, well, now they came up with another theory. The contract's ambiguous. West Virginia law is clear, and the contract was controlled by West Virginia law. If you're going to have a damage limitation, it has to be expressed. It can't be implied. It can't be ambiguous. It has to be expressed. And we pointed to that case law as well. So what is your contention as to the appropriate date to begin running the statute of limitations? I think it should have run when the affirmative defense was pled, but certainly when she got the impression that her lawyers didn't think they could defend it. Which, what date would that be? That would have been March of 22, or roughly. March of? 22. And what happened on that date? She shortly thereafter fired them. She shortly thereafter fired them and hired Costanza. I'm sorry, so which happened? It's unclear as to which date she got that. We know when she fired her lawyers, and she testified in her deposition, I fired them because they weren't bulldog enough, but she also testified at the time she didn't think her lawyers felt they could win the case. She didn't think her lawyers felt they could defend it. That's what she said. So whether that's the reason they fired them or not, I don't know. I think a jury might think that's the reason. But she clearly conceded at that point. She knew there was a host of affirmative defenses saying it wasn't a valid contract. She thought her lawyers, who she was firing, didn't think they could defend the contract. She knew there was this issue in the affirmative defense, and she had read it before. That is enough to put a reasonable person on notice that she should look into it further. That's what Ohio law requires. It doesn't require actual knowledge. She hired another lawyer. Never asked him. Well, certainly didn't do anything for a year and three months after that. Right? Didn't do anything for a year and three months after she knew all that. So that bars the claim. But the key, in your view, is the March of 2022 as the date that starts the running of the statute of limitations. And that is because that is the date that she ended her relationship with the law firm that you are representing and Schwederman, who you say is not involved in this case. But he was the lawyer who the other person in this lawsuit, Christopher Justice, whose name has not been mentioned, but the one who drafted the contract, said, oh, I can't handle the litigation. My partner or colleague or whoever, Schwederman, will handle it. Right. That wraps it up. But I think if you look at Ohio law, in cases where someone asserts affirmative defense and someone's actually reading the affirmative defense and sees that it's brought up, that was fine. It should end there, but it's wrapped up by the time she thinks her lawyer's messed up. So basically a client who reads an answer and says, oh, there are 10 defenses or here are 20 or whatever, and some of them might be good, they had better go get a new attorney to evaluate whether malpractice has been caused. They should investigate it further. That's what Ohio courts say. But what if she had asked Christopher Justice? You think by contract it's still good because they're raising an affirmative defense here of whatever. Yeah. I mean, that's one thing. But the simple fact is, whether she asked them or not, right, she said she asked Schwederman, but she didn't believe him. She testified that she didn't think they could defend it. That was her take on it. Right. So no matter what they said at that point in time, that's how she felt, that her lawyers wouldn't defend it. To use the example from medical malpractice, so you're going to the doctor and he says you have gallstones, and the patient keeps thinking, I'm still doing whatever they say and it's not helping me. And it turns out it's an abscessed appendix that she only finds out later, but she keeps telling the doctor, I just don't understand why your gallstone remedy isn't working. She should go out and hire another doctor right then. No, not then, because there's nobody telling her anything different. But when she gets another doctor that says it's an abscess, she doesn't have to know that the doctor misread the chart or misread the scan. Which doctor told her it was an abscess? Whatever next doctor told her. No, I mean, the analogy is here. Which lawyer told her that . . . Her criminal lawyer told her a year and three months later. Okay. So that's when she should then have . . . Not according to this case and FDIC, not according to every Ohio case. Every Ohio case is clear. You don't have to know it's malpractice. You don't. You have to know something's amiss. You have a duty to then go find out. Yeah, but you're saying that even Casenza's wrong, that it's a losing contract. So that's really . . . I mean, so you're saying she probably didn't even have knowledge then because he was wrong when he said you have a losing contract. Well, she had knowledge that she thought something was amiss. So you're putting it all on the client. It is. But that's Ohio law. Whether it's right or wrong, the dissent in Zimmy talked exactly what you're talking about. If you look at the dissent in Zimmy, that's what they were saying. You shouldn't put the onus on the contract to go find this out. That's what the . . . She had been concerned all along through her dealings regarding this contract. The issue becomes almost how severe does her concern have to be to compel her to take action. I mean, one thing to be concerned about a possible difficulty or problem is another to know how drastic or serious the concern has to be. They're not paying you. They're saying they're not paying you because . . . Well, the fact that she's not getting paid doesn't answer the legal issue as to whether she has a cause of action or when the cause of action begins to run. No. And what we're talking about is whether we agree with Ohio law because Ohio law is clear. She doesn't have to know there's malpractice. She just has to know that something might be up. How did the litigation end against the purchaser? They settled it for way less than they should have. They settled it for $150,000 thinking they were bound and there was no clause. And he was in the room when they settled it. So they settled it for an amount . . . They actually had a criminal lawyer that didn't understand the documents, and they settled it for an amount less, and they settled it with a malpractice lawyer already involved with the idea they'll come and sue us. Rather than ever calling us or ever saying this so we could tell them you're just wrong, right? Any further questions? Thank you. Thank you. Your Honors, I think you've seized on one of the dilemmas here and one of the real reasons that I wanted to come down and talk to you face-to-face today about this rather than just submit it on briefs. I handle a good number of legal malpractice cases statewide. And what typically happens in these cases are the attorneys do what they're supposed to do under the ethical rules. They realize they've made a mistake, and they contact their clients, and they advise them in writing, hey, we made a mistake. You should go consult with another attorney. And then the system works properly. And they do that because they have an ethical obligation to their clients that they respect. We all have in this room ethical obligations to our clients. But that's not what happened here. These folks to this day, you just heard it. This case is no good. It's garbage. There's no basis to it. So they deny. They still deny that they did anything wrong, even though all these other attorneys have said, no, these contracts are ridiculous. So they're still insisting on that. But yet Stacey Kales was somehow supposed to be put on notice earlier that they did something wrong. And their response in their brief when I brought that up was, well, the rules permit us to plead in the alternative. Well, yes, they do. The civil rules, the rules of evidence permit that. But there has to be some logic to it. You can't say that we did nothing wrong even as of today's date and say that my client should have figured out earlier that we did something wrong. And that's the dichotomy here. Under that theory, wouldn't your client have forever to bring a malpractice suit if they keep saying they didn't do anything wrong? Well, no. At some point, I mean, she was informed by her counsel that there was a problem. I mean, that would be the end when she received the actual knowledge. Your Honor was discussing whether it was implied or whatever knowledge.  Constructive, excuse me. Thank you. Versus actual. But I suppose maybe under a constructive analysis, I don't know what the end would be. But she received actual knowledge. But that's what's, I think, offensive about what the district court did and why I would urge you to reverse the remand with the finding that this, that April 13th of 23 was the cognizable event. Because what you're going to, if that district court decision stands, what's going to happen is all lawyers are going to do is run out the clock on their clients. They can keep telling them forever, we did nothing wrong, we did nothing wrong, we did nothing wrong. The year's up. Oh, sorry, you should have figured out earlier that we did something wrong. That's what's going to happen here. And in fact, that's what they're urging to occur here. That lawyers are going to run out the clock. The statute of limitations in these cases is the shortest there is. It's only a year. So the deck's stacked against these folks to begin with on legal malpractice crimes. So what would be wrong with saying when you fire the lawyer for whatever reason, that's when the client should start looking into whether the lawyer malpracticed. Similarly, if the doctor's been telling you you have gallstones and you say, I'm done with you, I'm going to go to another doctor, that's when you should start investigating was there medical malpractice in telling you you have gallstones. Well, if you go back a step, what the Ohio statute of limitations reads is that the client has two dates by which they can sue their attorney, either when the termination of the legal representation or when the cognizable event occurs, the latter of those two dates. So, yes, in some instances maybe the termination is later, but in this case we're arguing about the cognizable event date. Yeah, but the cognizable event is the termination of the law firm in the representation of the litigation, whereas I thought the termination of the matter was when the contract was drafted and the drafter says here's your contract and you don't need a liquidated damage. You mean the liquidated damages problem is not going to be a problem for you because there are these other things in Ohio that will protect you. The district court did make that argument that the cognizable event was when she terminated the law firm for the litigation. However, that was only four pages of deposition testimony, and with all due respect, what the testimony says that you read, the reason she fired them was because they weren't being bulldogs, they weren't being aggressive enough. She used a lot of colorful metaphors in there, you can see, but that's why she terminated them. She did not believe that the contract was weak. That was her interpretation of the way the attorneys were handling the litigation. They were handling the litigation as though they had something to be afraid of, yet in her mind they had nothing to be afraid of. She had hired a big law firm to draft these. The people just simply weren't paying her for her business, and so why can't she just ram this thing through and get paid? That's in her mind. Why am I not getting paid on this? So that struck me as a stark contrast with going to the next lawyer and waiting a year and a half for anything to happen. I do not know why Attorney Kosenza took the time that he did, but there was a whole bunch of things in there with opposing counsel, there was people out of maternity leave, whatever, so I don't know why it took that long exactly, and that's not really clear from the record why it took that long, but it was sort of extraneous facts that didn't really have anything to do with the litigation itself. So the issue becomes whether she fired the lawyer because she should have realized that he had committed malpractice or alternatively because he was not being effective in the time and effort he was expending to collect under the contract, and we don't know which of those alternatives or perhaps both should be the linchpin here. So that would be a fact question, I would imagine. It would be, although I would allege on the four pages of deposition testimony that we do have, she just talks about a bulldog. She never talks about not believing the contract was valid because they told her it was valid and they were litigating it as though it were valid. But to your point, that is a factual question. A fact question in terms of when she knew or should have known. I mean, I think all these are hopelessly wrapped up in factual issues that should have been resolved by a fact finder more so than as a matter of law when we don't even agree over, I guess, what this testimony is. Thank you both for your argument. Thank you, Your Honor. The case will be submitted.